# APPENDIX B

Law Offices
Kevin M. Kelly, P.C.
A Professional Corporation
10 E. 22nd St., Suite 216
Lombard, IL 60148
Phone:(866) 774-1059
Phone: (630) 916-1188
Fax: (630) 916-0696
EMAIL: DEMAND@KKELLYLAW.COM

September 9, 2010

Carole G Hall
a/k/a Carole Grant-Hall

REDACTED

RE:   Cavalry Portfolio Services, LLC
      as servicing agent for Cavalry SPV I, LLC
      as assignee of Orchard Bank
      Creditor's Account No. ████0613
      Our File No. ████2.001
      Amount Due $2523.38

Dear Carole G Hall a/k/a Carole Grant-Hall:

Please be advised that this office has been retained by Cavalry Portfolio Services, LLC as assignee of Orchard Bank to collect from you the entire balance. As of September 9, 2010, you owe $2523.38 (the exact amount due). Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary, after we receive your check in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call me at 866/774-1059 or 630/916-1188.

If you want to resolve this matter without a lawsuit, you must, within one week of the date of this letter, either pay the above amount or call my office to work out arrangements for the payment of this debt. If you do neither of these things, I will be entitled to file a lawsuit against you for the collection of this debt when the week is over.

Federal law gives you thirty days after you receive this letter to dispute the validity of this debt or any part of it. If you do not dispute it within that period, I will assume that it is valid. If you do dispute it -- by notifying me in writing to that effect -- I will, as required by the law, obtain and mail to you proof of the debt. And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor Cavalry Portfolio Services, LLC, I will furnish you that information too.

The law does not require me to wait until the end of the thirty day period before suing you to collect this debt. If, however, you request proof of this debt or the name and address of the original creditor within the thirty day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the required information to you.

THIS COMMUNICATION IS BEING SENT BY A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT THIS DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Very truly yours,

KEVIN M. KELLY

# APPENDIX C

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

Cavalry Portfolio Services, LLC
as servicing agent for Cavalry SPV I, LLC
as assignee of Orchard Bank

             Plaintiff,

         v.

Carole G Hall
a/k/a Carole Grant-Hall

             Defendant(s)

Case No.: **10M1 2·02567**

Amount Claimed: $2533.17 plus all costs

Return Date: 12/27/2010

## COMPLAINT

Plaintiff claims as follows:

1.    Cavalry Portfolio Services, LLC is authorized to do business in the State of Illinois.

2.    Carole G Hall a/k/a Carole Grant-Hall opened a charge account with Orchard Bank, promising to make monthly payments as specified in the charge agreement for the purchases charged to the account.

3.    Plaintiff is the successor in interest of said charge account from Orchard Bank having purchased said account in good faith, for value and in the regular course of business.

4.    Defendant(s) did make purchases and charged the same to the account, leaving a balance of $2464.97, plus interest at a rate of 5.0000% in the sum of $68.20 for a total due and owing of $2533.17.  (See Statement of Account and Exhibits attached hereto as Exhibit A)

5.    Defendant(s) has/have failed to make the monthly payments due on the account, whereupon the Plaintiff declared the Defendant(s) to be in default and demands payment of the balance.

6.    Plaintiff claims attorneys fees if provided for in the agreement.

7.    Plaintiff has complied with all parts of the contract on its part to be performed.

    WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant(s) Carole G Hall a/k/a Carole Grant-Hall in the amount of $2533.17, plus any interest and late charges that will accrue prior to judgment, plus court costs and reasonable attorneys fees.

Kevin M. Kelly, P.C.
Attorney for Plaintiff
10 E. 22nd Street, Suite 216
Lombard, Illinois  60148
(630) 916-1188
Illinois ARDC Attorney No: 06187628
Cook Attorney No. 15930

KEVIN M. KELLY

## AFFIDAVIT OF CLAIM

STATE OF    NEW YORK   )
                         ) SS

COUNTY OF   WESTCHESTER )

RE: Cavalry Portfolio Services, LLC as assignee of Cavalry SPV I, LLC as assignee of HSBC Bank Nevada, N.A. \ Orchard Bank (original creditor).

vs.

CAROLE G HALL

Before me, a notary public in and for Westchester County, personally appeared Kristina D. Pagni, who upon being duly sworn on oath, deposed and said:

1. I am an agent and duly authorized representative for Plaintiff and am competent to testify to the matters set forth herein.

2. I am acting in the capacity of Legal Administrator for my employer Cavalry Portfolio Services LLC, a Delaware limited liability company. Cavalry Portfolio Services, LLC performs recovery services for its affiliate, Cavalry SPV I, LLC. In performing recovery services for Cavalry SPV I, LLC, I am familiar with and have access to the books and records of Cavalry SPV I, LLC and of Cavalry Portfolio Services, LLC.

3. That the defendant, CAROLE G HALL, the account holder(s), opened an account with HSBC Bank Nevada, N.A. \ Orchard Bank on 3/18/2003, which account became delinquent and was charged off on 12/31/2009 (the "Account").

4. As of 9/9/2010, the balance due and owing by the account holder(s) on the account as of the date hereof is $2523.38, which balance is comprised of $2464.97 of principal balance and $58.41 of accumulated interest + $0 of costs + $0 of other charges. The principal balance continues to accrue interest as of the date hereof at a rate of 5%. The account holder(s) have been credited for all payments, set-offs or other credits due.

5. That the Account was purchased by Cavalry SPV I, LLC on 1/26/2010 and the servicing and collection rights for the account were assigned by Cavalry SPV I, LLC to Cavalry Portfolio Services, LLC

6. In the normal course of business, Cavalry Portfolio Services, LLC maintains computerized account records for account holders. Cavalry Portfolio Services, LLC maintains such records in the ordinary and routine course of business and is charged with the duty to accurately record any business act, condition or event onto the computer record maintained for the accounts, with the entries made at or very near the time of any such occurrence. I have reviewed the applicable computer record as it relates to the Account, and I make this Affidavit based upon information from that review, and If called as a witness, I could testify to the following based on that review.

7. HSBC Bank Nevada, N.A. \ Orchard Bank compiles records related to its account holders in electronic format. Subsequent to the purchase of the account, HSBC Bank Nevada, N.A. \ Orchard Bank transferred copies of its electronic business records to Cavalry SPV I, LLC, which records were loaded into the computer system of Cavalry Portfolio Services, LLC and which are maintained in an electronic format.

8. That the attached statement of account with respect to the Account of CAROLE G HALL is just, true and correct according to the books and records, that the documents attached to the complaint are true and correct copies of the original and if called as a witness at trial, I can testify as to its contents.

9. That the defendant is not believed to be an active member of any branch of the Armed Forces of the United States of America.

10. Upon information and belief, no Defendant is an infant or incompetent or a member of the United States Armed Forces who would be entitled to stay relief.

11. Under oath, I am authorized to make this affidavit for Plaintiff and I am informed and believe the above statements are true and correct.

Subscribed and sworn to before me on 9/9/2010

_____
Legal Administrator

KEVIN KELLY
13850613

_____
LOUIS DARDIGNAC
Notary Public, State of New York
No. 01DA5057380
Qualified in Rockland County
Commission Expires March 25, 2014

# CAVALRY

7 SKYLINE DRIVE, HAWTHORNE, NY 10532 (800) 724-1757

October 8, 2010

Carole G Hall
a/k/a Carole Grant-Hall

7610 S Ridgeland Ave Apt. 1
Chicago IL 60649

### Statement of Account

Cavalry Reference Number:       13850613
Original Account Number:        5488975044757857
Original Institution:           Orchard Bank

| | |
|---|---|
| Current Statement Date | 10/8/10 |
| Date of Charge Off | 3/16/10 |
| Last Payment Date | 12/31/09 |
| Principal as of Statement Date | $2464.97 |
| Accumulated Interest | $68.20 |
| Account Balance | $2533.17 |
| Costs | $0.00 |
| Other Charges | $0.00 |
| Interest Rate | 5.0000 % |

Please be advised this communication is from a debt collector.   This is an attempt to collect a debt and any information obtained will be used for that purpose.



349

# ASSIGNMENT

The undersigned Cavalry SPV I, LLC ("Assignor"), effective as of January 27, 2010 hereby transfers and assigns to Cavalry Portfolio Services, LLC, a limited liability company organized under the laws of the State of Delaware ("Assignee"), all of Assignor's rights to pursue collection and judicial enforcement of obligations under each of the Assignor's accounts purchased pursuant to that Purchase Agreement dated July 10, 2009, by and between Assignor and HSBC Bank Nevada, N.A. and HSBC Card Services (III), Inc., as amended, including engagement of attorneys and commencement of legal actions reasonably required to enforce said obligations, for the consideration of Assignor's covenants in the Servicing and Management Agreement between Assignor and Assignee dated as of June 13, 2003.

This assignment of Accounts shall be governed by the laws of the State of New York without regard to the conflict-of-laws rules thereof.

ASSIGNOR:

Cavalry SPV I, LLC

By: _Donald E. Strauch_
Name: Donald E. Strauch
Title: Executive Vice President

HSBC 1.10

BILL OF SALE

HSBC CARD SERVICES (III) INC., HSBC BANK NEVADA N.A. ("Seller"), for value received and pursuant to the terms and conditions of the Purchase Agreement ("Agreement") dated July 10, 2009 between Seller and Cavalry SPV I, LLC. ("Purchaser"), does hereby sell, assign and convey to Purchaser, its successor and assigns, all right, title and interest of Seller in and to those certain purchased receivables listed on the Sale File attached as Exhibit A, without recourse and without representation of, or warranty of, collectibility, or otherwise, except to the extent provided for within the Agreement.

EXECUTED this 29th day of January, 2010

HSBC CARD SERVICES (III) INC.

By: _____
Name: Susan Solomon
Title: Vice President-Assistant Secretary


HSBC BANK NEVADA N.A.

By: _____
Name: Susan Solomon
Title: Senior Vice President





IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

Cavalry Portfolio Services, LLC
as servicing agent for Cavalry SPV I, LLC
as assignee of Orchard Bank
                        Plaintiff,

            v.                                          No.

Carole G Hall
a/k/a Carole Grant-Hall

        Defendant(s)

## AFFIDAVIT AS TO MILITARY SERVICE

Kevin M. Kelly, on oath states:

With respect to Defendant Carole G Hall a/k/a Carole Grant-Hall, he/she/they is not in the military service of the United States.

This affidavit is based on these facts:

Upon information and belief.

_Kevin M. Kelly_
KEVIN M. KELLY

[x]  Under penalties as provided by law pursuant to
735 ILCS 5/1-109 the above signed certifies that the
statements set forth herein are true and correct.

KEVIN M. KELLY, P.C.
Attorney for Plaintiff
10 E. 22nd Street, Suite 216
Lombard, IL 60148
(630) 916-1188
Attorney No. 15930

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY

# APPENDIX D

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### MUNICIPAL DEPARTMENT, FIRST DISTRICT

Cavalry Portfolio Services, LLC
as servicing agent for Cavalry SPV I, LLC
as assignee of Wells Fargo Bank, N.A.,
                          Plaintiff,

Case No.: **10 M 1    2 0 2 0 8 7**

Amount Claimed: **$5902.45 plus all costs**

       v.

Paul J Asiama
a/k/a Paul Julius Asiam

              Defendant(s)

Return Date: **12-13-10**

### COMPLAINT

Plaintiff claims as follows:

1.     Cavalry Portfolio Services, LLC is authorized to do business in the State of Illinois.

2.     Paul J Asiama a/k/a Paul Julius Asiam opened a charge account with Wells Fargo Bank, N.A., promising to make monthly payments as specified in the charge agreement for the purchases charged to the account.

3.     Plaintiff is the successor in interest of said charge account from Wells Fargo Bank, N.A. having purchased said account in good faith, for value and in the regular course of business.

4.     Defendant(s) did make purchases and charged the same to the account, leaving a balance of $5335.36, plus interest at a rate of 15.9000% in the sum of $567.09 for a total due and owing of $5902.45. (See Statement of Account and Exhibits attached hereto as Exhibit A)

5.     Defendant(s) has/have failed to make the monthly payments due on the account, whereupon the Plaintiff declared the Defendant(s) to be in default and demands payment of the balance.

6.     Plaintiff claims attorneys fees if provided for in the agreement.

7.     Plaintiff has complied with all parts of the contract on its part to be performed.

       WHEREFORE, Plaintiff prays for judgment in its favor and against Defendant(s) Paul J. Asiama a/k/a Paul Julius Asiam in the amount of $5902.45, plus any interest and late charges that will accrue prior to judgment, plus court costs and reasonable attorneys fees.

Kevin M. Kelly, P.C.
Attorney for Plaintiff
10 E. 22nd Street, Suite 216
Lombard, Illinois 60148
(630) 916-1188
Illinois ARDC Attorney No: 06187628
Cook Attorney No. 15930

KEVIN M. KELLY

DOROTHY BROWN
CLERK
CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
CIVIL DIVISION
10 NOV -5 AM 9:11
FILED-50

# AFFIDAVIT OF CLAIM

STATE OF     NEW YORK    )
                            ) SS
COUNTY OF    WESTCHESTER )

RE: Cavalry Portfolio Services, LLC as assignee of Cavalry SPV I, LLC as assignee of Wells Fargo Bank, N.A. (original creditor).

vs.

PAUL J ASIAMA

Before me, a notary public in and for Westchester County, personally appeared Lauren E. Moss, who upon being duly sworn on oath, deposed and said:

1. I am an agent and duly authorized representative for Plaintiff and am competent to testify to the matters set forth herein.

2. I am acting in the capacity of Legal Administrator for my employer Cavalry Portfolio Services LLC, a Delaware limited liability company. Cavalry Portfolio Services, LLC performs recovery services for its affiliate, Cavalry SPV I, LLC. In performing recovery services for Cavalry SPV I, LLC, I am familiar with and have access to the books and records of Cavalry SPV I, LLC and of Cavalry Portfolio Services, LLC.

3. That the defendant, PAUL J ASIAMA, the account holder(s), opened an account with Wells Fargo Bank, N.A. on 1/29/2007, which account became delinquent and was charged off on 1/31/2010 (the "Account").

4. As of 8/17/2010, the balance due and owing by the account holder(s) on the account as of the date hereof is $5793.22, which balance is comprised of $5335.36 of principal balance and $457.86 of accumulated interest + $0 of costs + $0 of other charges. The principal balance continues to accrue interest as of the date hereof at a rate of 15.9%. The account holder(s) have been credited for all payments, set-offs or other credits due.

5. That the Account was purchased by Cavalry SPV I, LLC on 2/19/2010 and the servicing and collection rights for the account were assigned by Cavalry SPV I, LLC to Cavalry Portfolio Services, LLC

6. In the normal course of business, Cavalry Portfolio Services, LLC maintains computerized account records for account holders. Cavalry Portfolio Services, LLC maintains such records in the ordinary and routine course of business and is charged with the duty to accurately record any business act, condition or event onto the computer record maintained for the accounts, with the entries made at or very near the time of any such occurrence. I have reviewed the applicable computer record as it relates to the Account, and I make this Affidavit based upon information from that review, and if called as a witness, I could testify to the following based on that review.

7. Wells Fargo Bank, N.A. compiles records related to its account holders in electronic format. Subsequent to the purchase of the account, Wells Fargo Bank, N.A. transferred copies of its electronic business records to Cavalry SPV I, LLC, which records were loaded into the computer system of Cavalry Portfolio Services, LLC and which are maintained in an electronic format.

8. That the attached statement of account with respect to the Account of PAUL J ASIAMA is just, true and correct according to the books and records, that the documents attached to the complaint are true and correct copies of the original and if called as a witness at trial, I can testify as to its contents.

9. That the defendant is not believed to be an active member of any branch of the Armed Forces of the United States of America.

10. Upon information and belief, no Defendant is an infant or incompetent or a member of the United States Armed Forces who would be entitled to stay relief.

11. Under oath, I am authorized to make this affidavit for Plaintiff and I am informed and believe the above statements are true and correct.

Subscribed and sworn to before me on 8/17/2010

_____
Legal Administrator

LOUIS DARDIGNAC
Notary Public, State of New York
No. 01DA5057380
Qualified in Rockland County
Commission Expires March 25, 2014

VIN KELLY
176813

**Cash on Demand®**
**Account Number**      6048 7000 9002 8735

Customer Service: **1-866-420-2353**
Servicio En Español: **1-866-420-2353**
Visit Us Online: wellsfargofinancial.com

| New Balance | Available Credit | Minimum Payment Due | Payment Due Date |
|---|---|---|---|
| $5,335.36 | $0 | $956.00 | 02/02/2010 |

**Important Messages**

YOUR ACCOUNT'S PAST DUE STATUS MAY WARRANT
FURTHER COLLECTION ACTION. PLEASE CALL US
TODAY TO RESOLVE THIS MATTER AT 1-877-657-6512.
WE ARE WILLING TO WORK WITH YOU, BUT CANNOT
HELP UNTIL YOU CALL.

Your account is currently closed.

Important account changes are coming your way in February 2010. Please see the enclosed inserts for more details.

**Transaction Summary**      Billing Period: 12/09/2009 – 01/08/2010

| Tran Date | Post Date | Transaction Description | Reference Number | Charges | Payments/ Credits |
|---|---|---|---|---|---|
| 01/04 | 01/04 | ** LATE CHARGE | | 39.00 | |

| Account Summary | Available Credit | Credit Limit | Over Limit Amount | Past Due Amount | Days In Billing Cycle | Billing Date |
|---|---|---|---|---|---|---|
| - | $0 | $5,500 | $0.00 | $792.00 | 31 | 01/08/2010 |

| Balance Summary | Previous Balance | | New Advances | | Other Charges | | Payments & Credits | | FINANCE CHARGE | | New Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | $5,225.34 | + | $0.00 | + | $39.00 | - | $0.00 | + | $71.02 | = | $5,335.36 |

5542   52G    3   7   5   100108   0    CO PAGE 1 of 2    1 0 9393   0000   CS03   O1AK5542

Make checks payable to: WELLS FARGO FINANCIAL

WELLS FARGO FINANCIAL CARDS
P.O. BOX 98791
LAS VEGAS, NV 89193-8791

Please Print Address and/or Phone Number Changes Below

Address _____

City _____ State ____ Zip ____
(   )      (   )
Home Phone      Work Phone

| Account # | 6048 7000 9002 8735 |
|---|---|
| Payment Due Date | February 2, 2010 |
| New Balance | $5,335.36 |
| Minimum Payment | $956.00 |

$ ☐☐☐ , ☐☐☐ . ☐☐

WELLS FARGO FINANCIAL CARDS
P.O. BOX 98791
LAS VEGAS, NV 89193-8791

PAUL J ASIAMA
7729 S WINCHESTER AVE
CHICAGO IL 60620-5225



| Payment Summary | Minimum Payment † | Past Due Amount | Total Minimum Payment Due | Payment Due Date |
|---|---|---|---|---|
| | $164.00 + | $792.00 = | $956.00 | 02/02/2010 |

† Includes the Regular Minimum Payment, and any payments on Promotional Balances.

| APR Summary | Average Daily Balance | Daily Periodic Rate** | Corresponding Annual Percentage Rate** | FINANCE CHARGE |
|---|---|---|---|---|
| ADVANCES | $5,259.62 | 0.04356% | 15.90% | $71.02 |
| ADVANCE FEES | | | | $0.00 |
| WIRE TRANSFER FEES | | | | $0.00 |

**ANNUAL PERCENTAGE RATE (APR) this period***    15.90%

* This APR reflects all finance charges imposed during this billing cycle, including advance fees, wire transfer fees, and balance transfer fees. Advance fees, Wire Transfer fees, and Balance Transfer fees are reflected in this APR only in the billing cycle in which these fees are imposed.
** Periodic Rates may vary

Account Number    6048 7000 9002 8735

Billing Date    01/08/2010

| Contact Information | | |
|---|---|---|
| **Call Us** | **Send Payments To** | **Send Inquiries To** |

English   1-866-420-2353    P.O. BOX 98791     P O BOX 5943 SIOUX FALLS, SD 57117-5943
Spanish 1-866-420-2353   LAS VEGAS, NV 89193-8791
TTY     1-866-239-3426
   Or visit us on the web at   wellsfargofinancial.com.
   Automated Information is available 24 hours a day, 7 days a week.
   Personalized service is available Monday - Friday 7 a.m. - 10 p.m., Saturday, 8 a.m. - 5 p.m.,
   Sunday, 9 a.m. - 5 p.m., Central time.
     • Report lost or stolen cards immediately.

5642     S2G     3    7   5    100108    0    C D PAGE 2 of 2     1 0   9393    0000    CS03   01AK5642

JAN. 29. 2007 10:23AM    WELLS FARGO 7084364526       NO. 5756   P. 2

## Supplemental Disclosure

Your Cash on Demand® account has a variable annual percentage rate.
As of January 1, 2007, monthly periodic rate is 1.74%,
**ANNUAL PERCENTAGE RATE is 20.90% (Prime + 12.65);**
Annual Membership Fee is $00.

| Annual percentage rate (APR) for advances as of January 1, 2007 | 20.90% |
|---|---|
| Variable rate information | Your APR may vary. The rate is determined monthly by adding 12.65% to the Prime Rate.** The maximum APR is 29% (28.08% in AK, 24.98% in AL, 26.4% in AZ, 26.65% in CA, 19.8% in CT, 28.8% in FL, 22.5% in GA, 18% in HI, NC, MA, TX and WV, 24.4% in OH, 21.75% in MN, 19.05% in ND, 21.68% in NE, 24% in PA and TN, 25% in WA, 27% in WY) and the minimum APR is 8.9% |
| Transaction fee for advances | 2% of the amount of the advance, but not less than $5.00 or more than $75.00 for any single advance in GA, KS, OR, TX, WI No fee in all other states |
| Late payment fee | $10.00 |

**The Prime Rate we use is the highest prime rate published in the Money Rates section of *The Wall Street Journal* on the first day of the month.

- Processing fee for phone payments by check or through Automated Clearing House procedures: $5.00 (unless prohibited by the law of your state)
- Wire transfer fee: Equal to the actual amount of the fee we pay to process the transaction. As of Oct. 1, 2004, the fee is $5.00. Any third party facilitator fee will be passed on equal to the actual amount charged by the third party. The fee varies by amount transferred; as of October 1, 2005 the fee is $52.60 for a $10,000 transfer.

To help the government fight the funding of terrorism and money laundering activities, U.S. Federal law requires financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

By signing below, you agree to the terms of the *Cash on Demand* Account Agreement (form number NA-1613-0506) and acknowledge receipt of the agreement. You acknowledge the existence of the Arbitration Agreement on the following page and you specifically agree to be bound by its terms. You need not accept the account or pay any fee disclosed unless you use the account.

| Print name of applicant – First | MI | Last | Birthdate (mo/day/yr) |
|---|---|---|---|
| PAUL | | ABRAMA | 02.47 |
| Print name of co-applicant – First | MI | Last | Birthdate (mo/day/yr) |
| | | | |

| Physical address 7728 S WINCHESTER AVE | | Apt. # | |
|---|---|---|---|
| City CHICAGO | State IL | Zip 60620 | Daytime Phone Number 773 224 3968 |
| Applicant Driver Licensed or ID# | State DL issued or ID Type IL | Co-Applicant Driver Licensed or ID# | State DL issued or ID Type |

| Applicant's Signature x Julisabearin | Date 01-29-07 | Applicant's Signature x | Date |
|---|---|---|---|
| Social Security Number | | Social Security Number | |

## Wells Fargo Financial Bank – Chargegard

I acknowledge that Chargegard Insurance is NOT an obligation of, or guaranteed by, Wells Fargo Financial Bank, Wells Fargo Bank, N.A., or any of their affiliates. I also acknowledge that Chargegard Insurance is NOT insured by the Federal Deposit Insurance Corporation (FDIC) or any other agency of the United States, or Wells Fargo Financial Bank, or Wells Fargo Bank, N.A., or any of their affiliates.

I understand that neither Wells Fargo Financial Bank nor Wells Fargo Bank, N.A. may condition any extension of credit upon either my purchase of an insurance product from you or any of your affiliates; or my agreement not to obtain, or a prohibition against my obtaining, an insurance product from an unaffiliated entity. The creditor is not acting as a broker in your but as an agent for the insurance company. The creditor and/or its affiliates, including insurance company affiliates, expect to be compensated and/or earn profits from the sale of insurance and/or non-insurance products.

The applicant signing below will be considered the primary cardholder and will be covered by Life, Disability and Unemployment protection. Any co-applicant will only have Life coverage.

By electing optional Chargegard insurance, I acknowledge that I do not need to purchase this insurance to get credit and I can get similar coverage from any insurer I choose. Chargegard includes credit life, disability, and involuntary Unemployment to the extent available in my state as described in the Summary of Insurance Coverage, I read and I meet the age and/or employment eligibility requirements shown in the disclosure.* Monthly premium charges are based on the account balance and the rate shown. I will receive notice of any rate increase. I may cancel anytime.

*Please see the disclosures on page 2.

Yes, please enroll me in Chargegard credit insurance.      No, please do not enroll me in Chargegard credit insurance.

|  |  | *Julisabearin* | 01-29-07 |
|---|---|---|---|
| Signature N1990-0299 | Date | Signature | Date CA#19 |

By signing above, I acknowledge that I received a copy of the insurance disclosures and that the disclosures were explained to me.

353

## ASSIGNMENT

The undersigned Cavalry SPV I, LLC ("Assignor"), effective as of February 22, 2010 hereby transfers and assigns to Cavalry Portfolio Services, LLC, a limited liability company organized under the laws of the State of Delaware ("Assignee"), all of Assignor's rights to pursue collection and judicial enforcement of obligations under each of the Assignor's accounts purchased pursuant to that Purchase Agreement dated January 14, 2010 (collectively, the "Agreement"), by and between Cavalry SPV I, LLC and Wells Fargo Bank, N.A., including engagement of attorneys and commencement of legal actions reasonably required to enforce said obligations, for the consideration of Assignor's covenants in the Servicing and Management Agreement between Assignor and Assignee dated as of June 13, 2003.

This assignment of Accounts shall be governed by the laws of the State of New York without regard to the conflict-of-laws rules thereof.

ASSIGNOR:
**Cavalry SPV I, LLC**

By: _____

Name: Donald E. Strauch

Title: Executive Vice President

Wells Fargo_2.10

## EXHIBIT A

### Bill of Sale

This Bill of Sale is entered into as of the 19th day of February, 2010 pursuant to that certain Purchase Agreement ("Agreement") dated and effective as of January 14 2010 by and between Cavalry SPV I LLC and Wells Fargo Bank, N.A. This purchase and sale is made pursuant to the terms of the Agreement, which terms are incorporated herein by reference and made a part hereof as if fully set forth.

Seller:  Wells Fargo Bank, N.A.

Buyer:  Cavalry SPV I, LLC.

Number of Receivables:  5,943 accounts

List of Receivables:  Attached hereto as Schedule I

Outstanding Gross
Balance of Receivables: ▓▓▓▓▓▓▓▓▓▓

Purchase Price: ▓▓▓▓▓▓▓▓

Cut-Off Date: February 12, 2010

Closing Date: February 19, 2010

Seller hereby absolutely sells, transfers, assigns, sets over and conveys to Cavalry SPV I, LLC all of Seller's right, title, and interest in and to each of the Receivables identified in Schedule I hereto together with any evidence of indebtedness, and all principal, interest or other proceeds of any kind with respect to the Receivables, but excluding any payments or other consideration received by or on behalf of Seller prior to the Cut-Off Date identified above.

CAVALRY SPV I LLC.

By: _____

Name:

Title:

WELLS FARGO BANK, N.A.

By: _____

Name:  Lyndon Hohwieler

Title:  Sr Vice President

**CASH ON DEMAND® ACCOUNT AGREEMENT**



This Agreement is your contract. Please read all of this Agreement and keep it for your records because it is binding on you if you or any joint cardholder uses or authorizes someone else to use the Cash on Demand ATM card or account.

1. **Identification of Parties.** In this Agreement, including the Arbitration Agreement which is contained in this Agreement, the words "you" and "your" mean each person who signed the Cash on Demand account acknowledgement or who otherwise requested a Cash on Demand account. The words "we," "us," and "our" mean Wells Fargo Bank, N.A., Sioux Falls, South Dakota. If you have a joint account, both of you are bound by this Agreement, including the Arbitration Agreement which is contained in this Agreement, and each of you is responsible for payment of the entire amount.

2. **Change of Terms.** We may change the Terms of this account at any time or for any reason if not prohibited by law. You understand that the terms of your account, including the Annual Percentage Rate, are subject to change. This means that the Annual Percentage Rate on your account may change to a higher Annual Percentage Rate, fixed Annual Percentage Rates may change to variable Annual Percentage Rates, or variable Annual Percentage Rates may change to fixed Annual Percentage Rates. Future changes will be made in accordance with this Agreement and applicable law. We will provide you with such notice as is required by applicable law. Such changes may apply to the existing balance on your account as well as to future balances in accordance with this Agreement and applicable law. If required by applicable law, we will permit you to reject certain types of changes, by providing us with an opt-out notice and closing your account, and you would then be permitted to repay any balance on the account under the terms in effect prior to the change.

3. **Account Information.** Your credit limit, your Annual Percentage Rate (APR), your daily interest rate and your annual fee are disclosed on the mailing form holding your ATM card(s) or a separate notice. See Section 5 and Section 8c for additional information.

4. **Promise to Pay.** When you obtain an advance or permit someone else to obtain an advance on your account, you promise to pay the total amount of the advance at the address indicated on your statement. You also promise to pay any interest or fees or other charges that may be due under this agreement. All amounts owed must be paid in U.S. dollars. "Conforming Payments" are payments mailed to the payment address designated on your billing statement using the envelope and the payment coupon enclosed with your billing statement, or made via our Web site. Conforming Payments received via mail by 5:00 p.m. local time at the location to which the payment is mailed will be credited as of the date of receipt. Conforming Payments received via mail after 5:00 p.m. local time at the location to which the payment is mailed may be credited as of the next day. Payments received at a location other than the payment address on your billing statement may have a delay in processing. If you use the online payment system or authorize a payment through an alternative method, the payment cut-off times will be disclosed during the online session, or at the time you authorize the alternative payment method. "Non-Conforming Payments" are payments made by any other means and may not receive credit for up to five days after the date of receipt. Non-Conforming Payments include, but are not limited to, placing the envelope and payment coupon enclosed with your billing statement in another envelope.

5. **Credit Limit.** You promise to obtain advances only up to your limit. You agree not to use your ATM card(s) when the use will exceed your total credit limit. You also agree that we are not obligated to extend credit to you for an amount that would make your outstanding balance exceed your total credit limit, or for any amount if your outstanding balance is already over the total credit limit. We can change your limit at any time. If we allow you to use your account for more than your limit, we can charge the advance to your account and we will not give up any of our rights under this Agreement or applicable law.

6. **Advances.**

a. **Generally.** An advance is an extension of credit, under your Cash on Demand account, made through a convenience check, an ATM card, a telephone request, or any other method we accept. You will not request any advance that would result in a default or would violate any law or this Agreement. We may refuse any advance request which does not comply with the requirements of this Agreement, or we may choose to accept any such advance and you will be required to repay it along with applicable interest, fees and other charges. We may post advances to your account in any sequence. We are not responsible to you if anyone refuses to accept payments you drawn on this account. We may place limits on the number and amount of certain types of advances made in a given period. We may restrict advances on your account without notice if we believe unauthorized or fraudulent transactions or losses may occur or if your account is delinquent, restricted, in violation of this Agreement, or otherwise in default.

b. **Convenience Checks.** We may send you convenience checks for your use. Each convenience check you use for any purpose including, but not limited to balance transfers or payments to another creditor, will be treated as an advance under this Agreement and will be subject to the advance fees set forth herein. You may not use convenience checks to make payments on your Cash on Demand account. You may write convenience checks against your available credit on a form provided by us and that has your name printed on it. When the convenience check is presented to us, we reserve the right to return it if the check is for an amount that exceeds your available credit or if the check is improperly signed or does not conform to our standards. If we post the check to your account, it will be treated as an advance.

c. **ATM Card.** You may obtain an advance using your Wells Fargo Financial Bank Cash on Demand ATM card at an Automated Teller Machine (ATM) provided your account has sufficient available credit to meet your request and the machine you are using has the necessary functionality. The card may not be used at Point of sale terminals. The card may not be used to make purchases.

d. **Advances made by Phone.** You may use your Cash on Demand account to transfer money into your checking or savings account via electronic funds transfer provided your account has sufficient available credit to meet your request. If we post this transfer to your account, it will be treated as an advance.

e. **Balance Transfers.** You may transfer balances from other accounts to your Account under this Agreement by contacting us via telephone or by using our prescribed balance transfer form. All balance transfers are treated as advances under this Agreement. There are no advance fees for balance transfers as described in Section 8d. If you use a convenience check to transfer a balance from another creditor, you will be subject to an advance fee under this Agreement as described in Section 8d.

7. **Billing Cycle.** A billing cycle is the interval between regular monthly statements. The billing date shown on a statement is the last day of the billing cycle for that statement.

8. **Regular Subaccount Terms.** These terms apply to your regular subaccount. When we use the term "account" and refer to your account terms, we mean those terms that apply to your regular subaccount and also the special terms that apply to any of your special subaccounts. See Section 9 for more information on special subaccounts and special terms:

a. **Minimum Payment.**

(i)    Except as noted below, your minimum payment is the larger of:

(1) 1% of the New Balance shown on your billing statement plus the sum of all fees and interest billed during the cycle for which the minimum payment is calculated,   rounded up to the next highest whole dollar; or

(2) $15.00 (or the entire balance on your account if the New Balance is less than $15.00).

In addition, for any billing cycle in which either you have a past due amount from a prior billing period or your New Balance exceeds your credit limit, we will first calculate the minimum payment for the current billing cycle (using the method described above) then we will add the greater of any past due amount or any over limit amount to arrive at the Total Minimum Payment Due shown on your billing statement.

The New Balance shown on your statement is the unpaid balance of your account at the end of a billing cycle. You may pay your entire balance in full or more than the minimum payment at any time. If you make a payment of more than the minimum payment but less than the unpaid balance, the amount you pay that is greater than the minimum payment (the "additional payment") will not reduce the amount of the minimum payment for your next billing cycle.

(ii) You promise to pay at least the minimum payment amount by the payment due date shown on each statement. The payment due date will be at least 25 days from the statement closing date and is printed on each billing statement you receive.

b. When Interest is imposed. The interest on an advance begins on the date of the transaction. There is no time period within which you can repay an advance without owing interest.

c. Periodic Interest Rate.

(i) The Annual Percentage Rate (APR) for advances will be calculated on a variable basis. The daily periodic interest rate is calculated by dividing the disclosed variable APR for the current billing cycle by 365. The calculated daily periodic interest rate is then used to figure the interest.

(ii) The variable rate for each billing cycle will be based on the prime rate (index rate) plus a margin. Section 3 describes where this information is disclosed. The variable APR is subject to changes in the prime rate. We will use the Prime Rate, or the average of the Prime Rates if there is more than one, published, in the "Money Rates" column of The Wall Street Journal on the first day of the month. If The Wall Street Journal is not published on the first day of the month, we will use the prime rate in the last issue of The Wall Street Journal. If the prime rate is no longer published or is otherwise unavailable, we may select a comparable rate. The daily periodic interest rate and the APR will increase if the prime rate increases and decrease if the prime rate decreases. An increase in the daily periodic interest rate and the APR may result in increased interest and may increase the number of minimum monthly payments necessary to repay the balance of the account. The rate change date for each month is the first day of the billing cycle beginning in that month. The daily periodic interest rate for a billing cycle is figured by dividing the corresponding ANNUAL PERCENTAGE RATE shown on your statement by 365. The daily periodic interest rate used in figuring the interest and the corresponding ANNUAL PERCENTAGE RATE, as well as the maximum APR on your account, are shown on the mailing form holding your Cash on Demand ATM card(s) or in a separate notice.

d. Advance Fee. We will charge an advance fee to your account for each advance you obtain. The amount of the advance fee will be 3% of the amount of the advance, but not less than $5.00 or more than $75.00 for any single advance. We may waive advance fees for certain advances for a specified period of time. This means that you will not be charged for advance fees on those advances during the special terms period.

e. Wire Fee. If, at your request, you or we use the services of a third party to facilitate a wire transfer, such as Western Union for example, you agree to pay the fees that may be charged to either of us by that third party. The current third party facilitator fee is $12.50. This fee is subject to change by the third party from time to time without notice to you.

f. Interest. The total interest shown on a statement will be made up of the sum of the following:

(i) Interest for advances, obtained by multiplying the average daily balance of advances during the billing cycle by the number of days in the billing cycle, and then multiplying this product by the daily periodic interest rate;

(ii) Interest for promotional rate balances (calculated in the same manner as interest for advances). See Section 9 for additional information on Special Terms and Special Rates

g. Average Daily Balance of Advances. To get the average daily balance of advances, each day we begin with the previous day's balance (including any unpaid interest and fees from previous billing cycles), add any new advances, and subtract any payments or credits that were applied to advances. Then, except for the first day of each billing period we add an interest amount equal to that day's balance times the daily periodic interest rate applicable to advances. This gives us the daily balance of advances (credit balances are treated as a zero daily balance). Then we add up all the daily balances of advances and divide the total by the number of days in the billing cycle. This gives us the average daily balance of advances.

h. Other Fees. We will charge your account for the following other fees set forth in this subsection below:

(i) Late Fee. If any minimum payment is late we can charge a late fee based on the balance at the time the late fee is assessed. The late fee amount will be equal to $20.00 if your balance on your statement is $250.00 or less, $29.00 if your balance on your statement is $250.01 to $1,000.00, and $39.00 if your balance on your statement is $1,000.01 or more ($15.00 regardless of balance on your statement if any minimum payment is more than 10 days late in IA). The late fee on your account will be based upon your state of residence at the time your account is issued (in the state of AR or the District of Columbia (DC), the amount of the late fee will be based upon the state or location where you applied for your account). A late fee will be billed only once on each regular minimum monthly payment. See Section 4 for payment processing time frames.

(ii) Returned Item/Redeposit Fee. We can charge a returned item/redeposit fee of $29.00 ($20.00 in IA) to your account for the return of each dishonored check, negotiable order of withdrawal, share draft, or similar item given in payment under this Agreement. The returned item/redeposit fee on your account The fee will also be charged if you authorize a payment under this Agreement through the use of Automated Clearing House procedures, utilize the Internet Online Payment System operated by us, or verbally or in writing authorize us to make a check on your checking account, and the payment is not honored. In the event that your check is returned unpaid for insufficient or uncollected funds, we may re-present your check electronically up to three times. (In IA, a return check fee will not be assessed if the reason the item was returned was that you stopped payment on the item.)

(iii) Returned Convenience Check Fee. We can charge a returned convenience check fee of $29.00 ($20.00 in IA) to your account for the return of each dishonored convenience check written on your account under this Agreement.

(iv) Convenience Check Stop Payment Fee. We can charge a stop payment fee of $29.00 ($20.00 in IA) to your account if you request a stop payment on a convenience check written on your account under this Agreement.

(vi) Alternative Payment Fee. A fee of up to $10.00 may be charged, and will be disclosed to you at the time of your request, if our representative makes arrangements over the telephone with you by which you agree to have an expedited payment made to your account either electronically or by us drawing a check on the deposit account you designate for the payment. There is no fee if the account used to make the payment is a Wells Fargo Bank account.

(vii) Special Mail Fee. If you request special mailing services, such as express delivery or courier services, we can charge a special mailing fee to your account equal to the actual special mailing costs.

i. Insurance. We can charge your account for the cost of insurance requested by you after disclosure to you of the cost. Amounts charged to your account for insurance will be treated as advances, but will not be assessed an advance fee as described in Section 8d.

9. Special Subaccounts. These terms apply to your special subaccounts:

**a. Special Terms.** We may allow an advance(s) at special terms. This part of your Agreement explains how these special terms apply. If we indicate that special terms apply to a particular advance(s), then the advance(s) is/are subject to the special terms. You accept our offer of special terms by requesting the advance.

**b. Special Subaccount Established.** Your acceptance of our offer of special terms establishes a special subaccount(s) by requesting an advance(s). A special subaccount is part of your Cash on Demand account, but the interest and minimum payment for a special subaccount are handled separately from the terms of your regular subaccount and from your other special subaccounts. Special terms offered will apply only to advances described in the offer. Advances made under the same terms and that have special terms beginning in the same billing cycle may be included in the same special subaccount, even if they were made under different offers. Advances that have special terms beginning in different billing cycles may be in different special subaccounts, even if they were made on the same offer.

**c. Length of Special Term(s).** The special terms for an advance begin on the date of the advance and last for the period of time indicated in the offer. The length of time special terms last is subject to our rights under Section 9d, "Transfer to Regular Subaccount Terms". If a special terms offer does not indicate how long the special terms last, then they last until the special subaccount is paid, subject to our rights under Section 9d, "Transfer to Regular Subaccount Terms".

**d. Transfer to Regular Subaccount Terms.** The unpaid balance of a special subaccount containing an advance(s) subject to a special terms offer will be transferred to your regular subaccount terms at the end of the special terms but before the minimum payment is figured. We may, upon proper notice at our option, transfer the unpaid balance (and the accumulated interest, if applicable) of a special subaccount containing an advance(s) subject to special terms to your regular subaccount terms any time you fail to make any required minimum payment on your account within 60 days after the due date for that payment. When the unpaid balance of a special subaccount is transferred to your regular subaccount, the special terms end, and the unpaid balance (and accumulated interest, if applicable) will be subject to the terms of your regular subaccount, without modification.

**e. No Interest.** If an offer says there is no interest, it means that there is no interest on the special subaccount containing an advance subject to special terms until special terms end. You may avoid interest on a no interest special subaccount by paying the balance of the special subaccount in full before the special terms end.

**f. Special Rate.** If special terms are offered, it means that the APR indicated in the offer will be used to calculate the corresponding daily periodic interest rate which will be used to figure the interest for the special subaccount instead of those used for the terms of your regular subaccount. We will impose interest in the same manner that we do for your regular subaccount. See Section 8b for imposition of interest.

**g. Interest for Special Subaccounts.** The balance on which the special subaccount interest is computed will be figured using the same method used for the terms of your regular subaccount. The Average Daily Balance of special subaccounts is calculated the same way as described in Section 8g. See also Sections 8f and g for explanation of interest.

**h. Minimum Payment for Your Special Subaccount.** The minimum monthly payment for a special subaccount containing a transaction(s) subject to the special terms will be figured the same way as your regular subaccount as explained in Section 8e.

**i. Other Fees.** The fees covered by Section 8h, "Other Fees," also apply to special subaccounts, but will be charged to your regular subaccount.

**10. Default – Entire Balance Due.** If you don't make a minimum payment on time or if you violate the terms of this Agreement, you will be in default. When that happens, you agree that to the extent permitted by law, we can require you to pay the remaining balance of your account at once. We can do this without giving you advance notice unless advance notice is required by law. If your account is in default, our rights include, but are not limited to, refusing to authorize further transactions on your account, refusing to honor convenience checks written on the account, and closing your account and any other credit accounts with us.

**11. Application of Payments.** Generally, we will apply payments in excess of the Minimum Payment Due to balances with higher APRs before balances with lower APRs. Otherwise, we will determine the method of applying payments and credits to your Account, in our sole discretion. In all cases, we will apply payments and credits in accordance with applicable law. We may, at our discretion, withhold a portion of your available credit line up to the amount of any payments or credits tendered to assure that the payment instrument is honored.

Payments submitted to us in the form of a paper document may be converted and presented to your financial institution through the use of Automated Clearing House procedures for processing and posting to your account. In the ordinary course of business, your check will not be provided to you with your bank statement, but a copy can be retrieved by contacting us.

**12. Lost or Stolen ATM Card(s) and Liability for Unauthorized Use.** If you believe that your Cash on Demand ATM card may have been lost or stolen or that your account number may have been used without your authorization, you must notify us immediately at the phone number or address shown on your statement. You agree to assist us in determining the facts, circumstances, and other pertinent information relating to any loss, theft or possible unauthorized use of your ATM card(s) and to comply with such procedures as we require in connection with our investigation. If your account is in good standing, we will send you new ATM card(s) with a new account number. You will not be considered to have opened a new account, and any existing balance will be transferred to the replacement account. You will not be held liable for the unauthorized use of your account.

**13. Refusal to Honor Cash on Demand ATM Card or Convenience Check/Illegal Transactions.** We are not responsible for the refusal of anyone to honor your Cash on Demand ATM card or Convenience Check. Your Cash on Demand ATM card(s) or Convenience Check(s) may not be used for any illegal transactions.

**14. Assignment.** We have the right to assign this account to another creditor. You may not assign your rights or obligations under this account to anyone.

**15. Right to Limit or Close.** We may limit or close your account, but the terms of this Agreement will apply until any unpaid balance is fully paid. If your account is "closed" you will not be able to obtain advances.

**16. Enforcement of Rights.** We may waive or delay enforcing any of our rights under this Agreement without losing them. We may waive or delay enforcing any of our rights as to one of you under this Agreement without affecting the obligation as to either of you.

**17. Credit Information and Credit Reports.**

**a. Credit Information.** You promise that any information you give to us in connection with your application or account is true and complete and understand that this information will be relied on by us in establishing your account and in extending credit under your account. We may report information we receive from you in connection with your account and information about your transactions with us to credit bureaus and others as permitted by law.

**b. Notifying Us of Inaccurate Information.** You have the right to notify us if we report inaccurate information about your account to the credit bureaus. Such notices should be sent in writing to us at Wells Fargo Financial Cards, P.O. Box 5943, Sioux Falls, SD 57117-5943. Please include your account number and a description of the information that is incorrect.

**c. Authorization to Investigate Credit Information and Obtain Credit Reports.** You authorize us to investigate your credit, employment, and income records and to verify your credit references. You authorize us to obtain credit reports on you in connection with your application, in connection with any review, enhancement or collection of your account, and for marketing purposes. You instruct any credit bureau to provide credit reports for these purposes to us or to any creditor to whom we assign this account.

**18. Cash on Demand ATM Card(s).** We may send you a Cash on Demand ATM card(s) for use with your account. If we ask, you must destroy the Cash on Demand ATM card(s) and any other credit instruments or devices that you have received.

**19. Law Governing this Agreement.** This Agreement and your account, as well as our rights and duties and your rights and duties regarding this Agreement and your account, will be governed by and interpreted in accordance with the laws of the United States and, to the extent applicable, the laws of the State of South Dakota, regardless of where you may reside or use your account at any time.

**19. Foreign Exchange or Currency Conversion.** You may not use your account to engage in a transaction in a currency other than U.S. dollars. You may not use your card at an ATM outside of the United States or its territories.

**21. Limits on Advances.** We reserve the right to limit the total amount and total number of advances per day. We also reserve the right to limit the amount of any single advance.

**22. Internet Gambling Transactions.** We reserve the right to restrict advances for Internet gambling.

**23. Telephone Monitoring And Contacting You.** From time to time we may monitor and record telephone calls regarding your account to assure the quality of our service. You agree, in order for us to service the account or to collect any amounts you may owe, that we may from time to time make calls and send text messages to you, using prerecorded/artificial voice messages and/or through the use of an automatic dialing device, at any telephone number associated with your account, including mobile telephone numbers that could result in charges to you. You also expressly consent to us sending email messages regarding your account to your email address.

**24. Attorney's Fees and Court Costs.** If you default and we refer your account for collection to an attorney who is not our salaried employee, you agree to pay reasonable attorney's fees and actual court costs to the extent permitted by the law of your state.

## ARBITRATION AGREEMENT

**a. Binding Arbitration.** You and Wells Fargo Bank, N.A. (the "BANK") agree that if a Dispute arises between you and the Bank, upon demand by either you or the Bank, the Dispute shall be resolved by the following arbitration process. The foregoing notwithstanding, the Bank shall not initiate an arbitration to collect a consumer debt, but reserves the right to arbitrate all other disputes with its consumer customers. A "Dispute" is any unresolved disagreement between you and the Bank. It includes any disagreement relating in any way to the Card or related services, accounts or matters; to your use of any of the Bank's banking locations or facilities; or to any means you may use to access the Bank. It includes claims based on broken promises or contracts, torts, or other wrongful actions. It also includes statutory, common law and equitable claims. A Dispute also includes any disagreements about the meaning or application of this Arbitration Agreement. This Arbitration Agreement shall survive the payment or closure of your account. **YOU UNDERSTAND AND AGREE THAT YOU AND THE BANK ARE WAIVING THE RIGHT TO A JURY TRIAL OR TRIAL BEFORE A JUDGE IN A PUBLIC COURT.** As the sole exception to this Arbitration Agreement, you and the Bank retain the right to pursue in small claims court any Dispute that is within that court's jurisdiction. If either you or the Bank fails to submit to binding arbitration following lawful demand, the party so failing bears all costs and expenses incurred by the other in compelling arbitration.

**b. Arbitration Procedure; Severability.** Either you or the Bank may submit a Dispute to binding arbitration at any time notwithstanding that a lawsuit or other proceeding has been previously commenced. **NEITHER YOU NOR THE BANK SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.** Each arbitration, including the selection of the arbitrator(s) shall be administered by the American Arbitration Association (AAA), or such other administrator as you and the Bank may mutually agree to (the AAA or such other mutually agreeable administrator to be referred to hereinafter as the "Arbitration Administrator"), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes ("AAA Rules"). To the extent that there is any variance between the AAA Rules and this Arbitration Agreement, this Arbitration Agreement shall control. Arbitrator(s) must be members of the state bar where the arbitration is held, with expertise in the substantive laws applicable to the subject matter of the Dispute. No arbitrator or other party to an arbitration proceeding may disclose the existence, content or results thereof, except for disclosures of information by a party required in the ordinary course of its business or by applicable law or regulation. You and the Bank (the "Parties") agree that in this relationship: (1) The Parties are participating in transactions involving interstate commerce; and (2) This Arbitration Agreement and any resulting arbitration are governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code), and, to the extent any provision of that Act is inapplicable, unenforceable or invalid, the laws of the state of South Dakota. If any of the provisions of this Arbitration Agreement dealing with class action, class arbitration, private attorney general action, other representative action, joinder, or consolidation is found to be illegal or unenforceable, that invalid provision shall not be severable and this entire Arbitration Agreement shall be unenforceable.

**c. Rights Preserved.** This Arbitration Agreement does not prohibit the Parties from exercising any lawful rights or using other available remedies to preserve, foreclose or obtain possession of real or personal property; exercise self-help remedies, including setoff and repossession rights; or obtain provisional or ancillary remedies such as injunctive relief, attachment, garnishment or the appointment of a receiver by a court of competent jurisdiction. All statutes of limitations applicable to any Dispute apply to any arbitration between the Parties. The provisions of this Arbitration Agreement shall survive termination, amendment or expiration of the Card or any other relationship between you and the Bank.

**d. Fees and Expenses of Arbitration.** Arbitration fees shall be determined by the rules or procedures of the Arbitration Administrator, unless limited by applicable law. Please check with the Arbitration Administrator to determine the fees applicable to any arbitration you may file. If the applicable law of the state in which you opened your account limits the amount of fees and expenses to be paid by you, then no allocation of fees and expenses to you shall exceed this limitation. Unless inconsistent with applicable law, each of us shall bear the expense of our own attorney, expert and witness fees, regardless of which of us prevails in the arbitration.

**e. California Residents Only.** In the event that you are a California resident, this Arbitration Agreement shall apply only to Disputes in which you seek for yourself individually amounts in excess of the jurisdictional limit of Small Claims Court, excluding attorneys' fees and costs.

**YOUR BILLING RIGHTS**
<u>KEEP THIS NOTICE FOR FUTURE USE</u>

This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

**What To Do If You Find a Mistake on Your Statement**

If you think there is an error on your statement, write to us at:

Wells Fargo Financial Cards
PO Box 5943
Sioux Falls, SD 57117-5943

In your letter, give us the following information:
• Your name and account number.
• The date and dollar amount of the suspected error
• If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
• Within 60 days after the error appeared on your statement.
• At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing*. You may notify us by other means, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**
When we receive your letter, we must do two things:
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:
• We cannot try to collect the amount in question, or report you as delinquent on that amount.
• The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
• While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
• We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:
• *If we made a mistake:* You will not have to pay the amount in question or any interest or other fees related to that amount.
• *If we do not believe there was a mistake:* You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

NA-1613R 0008 (ROC)

Customer Copy
Page 5 of 5

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

Cavalry Portfolio Services, LLC
as servicing agent for Cavalry SPV I, LLC
as assignee of Wells Fargo Bank, N.A.
                Plaintiff,

      v.                          No.   10M1   202087

Paul J Asiama
a/k/a Paul Julius Asiam

       Defendant(s)

## AFFIDAVIT AS TO MILITARY SERVICE

Kevin M. Kelly, on oath states:

With respect to Defendant Paul J Asiama a/k/a Paul Julius Asiam, he/she/they is not in the military service of the United States.

    <u>This affidavit is based on these facts:</u>

Upon information and belief.

*Kevin M. Kelly*
KEVIN M. KELLY

[x]  Under penalties as provided by law pursuant to
735 ILCS 5/1-109 the above signed certifies that the
statements set forth herein are true and correct.

---

KEVIN M. KELLY, P.C.
Attorney for Plaintiff
10 E. 22nd Street, Suite 216
Lombard, IL 60148
(630) 916-1188
Attorney No. 15930

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY**

# APPENDIX E

DOCKETED EGL & G
JAN 1 8 2010

Atty. No. 41106

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT**

CAVALRY PORTFOLIO SERVICES, LLC,      )
as servicing agent for CAVALRY SPV I, LLC,   )
as assignee of ORCHARD BANK,            )
                                        )
     Plaintiff,                        )    10 M1 202567
                                        )
     v.                                )    Amount Claimed: $2,533.17 + costs
                                        )    Return Date: 12/27/10
CAROLE G. HALL, a/k/a CAROLE GRANT-     )
HALL,                                   )
                                        )
     Defendant.                        )

## NOTICE OF MOTION

**TO:**   **(See attached service list.)**

    **PLEASE TAKE NOTICE** that on January _27_, 2011 at _2:00_ a.m/p.m., we shall appear before the Presiding Judge in Room 1101 of the Circuit Court of Cook County, Municipal Department, Richard J. Daley Center, Chicago, IL, and shall then and there present: **DEFENDANT CAROLE HALL'S MOTION TO VACATE TECHNICAL DEFAULTS,** a copy of which is attached hereto and hereby served upon you.

_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, hereby certify that on January 18, 2011, I caused to be served a true and accurate copy of the foregoing document via United States Mail and facsimile upon the following party:

Kevin M. Kelly, P.C.
10 E. 22nd Street, Suite 216
Lombard, IL 60148
FAX: (630) 916-0696

I further certify that the facsimile transmitted 6 pages from 120 S. LaSalle St., Suite 1800, Chicago, IL, 60603.

_____
Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106

Atty. No. 41106

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### MUNICIPAL DEPARTMENT, FIRST DISTRICT

|  |  |  |
|---|---|---|
| CAVALRY PORTFOLIO SERVICES, LLC, as servicing agent for CAVALRY SPV I, LLC, as assignee of ORCHARD BANK, | ) ) ) ) | |
| Plaintiff, | ) ) | 10 M1 202567 |
| v. | ) ) ) | Amount Claimed: $2,533.17 + costs <br> Return Date: 12/27/10 |
| CAROLE G. HALL, a/k/a CAROLE GRANT-HALL, | ) ) ) | |
| Defendant. | ) ) | |

### DEFENDANT CAROLE HALL'S MOTION TO VACATE TECHNICAL DEFAULTS

Defendant Carole Hall respectfully requests that the Court vacate any and all technical defaults entered January 10, 2011 in this matter. In support of this motion, Defendant states as follows:

1. On December 23, 2010, Defendant filed an appearance in this case and a court date was set for January 10, 2011.

2. A default was entered at the January 10, 2011 status call and the case was subsequently set on the prove-up call.

3. Defendant has retained counsel who is filing an additional appearance concurrent with the filing of this motion.

4. Defendant has valid defenses to this matter. Among other things, plaintiff Cavalry Portfolio Services, LLC is suing as a purported assignee for collection, but the assignment attached to the complaint (Appendix A hereto) does not comply with §8b of the Illinois Collection Agency Act, 225 ILCS 425/8b, in that it does not (1) transfer title (2) to an

identifiable debt, and (3) disclose the consideration for the assignment, all of which are required.

*Business Service Bureau, Inc. v. Webster*, 298 Ill. App. 3d 257, 698 N.E.2d 702 (4th Dist. 1998).

WHEREFORE, for the foregoing reasons, Defendant respectfully asks the Court

to enter an order vacating any and all technical defaults in this matter.

Respectfully submitted,

_____

Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Francis R. Greene
EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Atty. No. 41106 (Cook)

349

## ASSIGNMENT

The undersigned Cavalry SPV I, LLC ("Assignor"), effective as of January 27, 2010 hereby transfers and assigns to Cavalry Portfolio Services, LLC, a limited liability company organized under the laws of the State of Delaware ("Assignee"), all of Assignor's rights to pursue collection and judicial enforcement of obligations under each of the Assignor's accounts purchased pursuant to that Purchase Agreement dated July 10, 2009, by and between Assignor and HSBC Bank Nevada, N.A. and HSBC Card Services (III), Inc., as amended, including engagement of attorneys and commencement of legal actions reasonably required to enforce said obligations, for the consideration of Assignor's covenants in the Servicing and Management Agreement between Assignor and Assignee dated as of June 13, 2003.

This assignment of Accounts shall be governed by the laws of the State of New York without regard to the conflict-of-laws rules thereof.

ASSIGNOR:

Cavalry SPV I, LLC

By: _[signature]_
Name: Donald E. Strauch
Title: Executive Vice President

HSBC 1.10

# APPENDIX F

line 72

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Cavalry Portfolio Services, LLC
as servicing agent for Cavalry SPV I, LLC
       Plaintiff

        v.               Case No.:  10 M1 202567

Carole G Hall
a/k/a Carole Grant-Hall

       Defendant(s)

### Agreed ORDER

**THIS MATTER** having come before this Court upon the Plaintiff's Motion to Dismiss,

and the Court having been advised in the premises;

**IT IS HEREBY ORDERED** that this matter be and is hereby dismissed without

prejudice with leave to reinstate and the future court date of February 9, 2011 is hereby stricken.

ENTER:  Judge Rhoda Davis Sweeney

JAN 27 2011

          Judge         Judge's No.
          Circuit Court 1679

KEVIN M. KELLY, P.C.
10 E. 22nd Street, Suite 216
Lombard, IL  60148
(630) 916-1188
Cook Attorney No.15930
Peoria Attorney No. 3860
DuPage Attorney No. 9005
Winnebago Attorney No. 6344
Illinois Attorney No. 06187628

# APPENDIX G

STATE OF ILLINOIS)
                 )SS
COUNTY OF WILL   )

# IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
# WILL COUNTY

**COMPLAINT**                                    CASE NUMBER: 11 SC00350

CAVALRY PORTFOLIO SERVICES,                CORNELIUS GRAY
LLC
                                   vs.

## SMALL CLAIM COMPLAINT

    NOW COMES the Plaintiff, CAVALRY PORTFOLIO SERVICES, LLC, by and through its attorneys, ADLER & ASSOCIATES, LTD., and for its complaint against the Defendant(s), CORNELIUS GRAY , alleges and states as follows:

    1. That at the specific instance and request of the Defendant(s) CORNELIUS GRAY , CAVALRY PORTFOLIO SERVICES, LLC issued to Defendant(s) a certain credit card/revolving charge (open end consumer credit) account.

    2. That Defendant(s) made various charges to said account since the date of issuance and, after accounting for any payments made, there remains an unpaid and past due balance in the sum $3,786.44, as set forth in the attached affidavit.

    3. That demand for payment has been made upon Defendant(s) but Defendant(s) has/have failed or refused to pay said remaining balance.

    WHEREFORE, Plaintiff, CAVALRY PORTFOLIO SERVICES, LLC, prays judgment be entered in its favor and against the Defendant(s), CORNELIUS GRAY , in the amount of $3,786.44, plus costs.

ADLER & ASSOCIATES, LTD.

BY: _____
      For the Firm

ADLER & ASSOCIATES, LTD., #00017612
ATTORNEYS FOR PLAINTIFF
25 E. WASHINGTON, #500
CHICAGO, IL 60602
312 726-1814

221747

## AFFIDAVIT OF CLAIM

STATE OF     NEW YORK     )

)  SS

COUNTY OF     WESTCHESTER )

RE: Cavalry Portfolio Services, LLC as assignee of Cavalry SPV I, LLC as assignee of Bank of America/FIA Card Services, N.A.
(original creditor).

vs.

CORNELIUS GRAY

Before me, a notary public in and for Westchester County, personally appeared Kristina D. Pagni, who upon being duly sworn on oath,
deposed and said:

1. I am an agent and duly authorized representative for Plaintiff and am competent to testify to the matters set forth herein.

2. I am acting in the capacity of Legal Administrator for my employer Cavalry Portfolio Services LLC, a Delaware limited liability
company. Cavalry Portfolio Services, LLC performs recovery services for its affiliate, Cavalry SPV I, LLC. In performing recovery
services for Cavalry SPV I, LLC, I am familiar with and have access to the books and records of Cavalry SPV I, LLC and of Cavalry
Portfolio Services, LLC.

3. That the defendant, CORNELIUS GRAY, the account holder(s), opened an account with Bank of America/FIA Card Services, N.A.
on 9/3/1999, which account became delinquent and was charged off on 8/30/2007 (the "Account").

4. As of 7/22/2010, the balance due and owing by the account holder(s) on the account as of the date hereof is $3786.44, which
balance is comprised of $2725.13 of principal balance and $1061.31 of accumulated interest + $0 of costs + $0 of other charges. The
principal balance continues to accrue interest as of the date hereof at a rate of 0%. The account holder(s) have been credited for all
payments, set-offs or other credits due.

5. That the Account was purchased by Cavalry SPV I, LLC on 12/18/2009 and the servicing and collection rights for the account were
assigned by Cavalry SPV I, LLC to Cavalry Portfolio Services, LLC

6. In the normal course of business, Cavalry Portfolio Services, LLC maintains computerized account records for account holders.
Cavalry Portfolio Services, LLC maintains such records in the ordinary and routine course of business and is charged with the duty to
accurately record any business act, condition or event onto the computer record maintained for the accounts, with the entries made at or
very near the time of any such occurrence. I have reviewed the applicable computer record as it relates to the Account, and I make this
Affidavit based upon information from that review, and If called as a witness, I could testify to the following based on that review.

7. Bank of America/FIA Card Services, N.A. compiles records related to its account holders in electronic format. Subsequent to the
purchase of the account, Bank of America/FIA Card Services, N.A. transferred copies of its electronic business records to Cavalry SPV
I, LLC, which records were loaded into the computer system of Cavalry Portfolio Services, LLC and which are maintained in an
electronic format.

8. That the attached statement of account with respect to the Account of CORNELIUS GRAY is just, true and correct according to the
books and records, that the documents attached to the complaint are true and correct copies of the original and if called as a witness at
trial, I can testify as to its contents.

9. That the defendant is not believed to be an active member of any branch of the Armed Forces of the United States of America.

10. Upon information and belief, no Defendant is an infant or incompetent or a member of the United States Armed Forces who would
be entitled to stay relief.

11. Under oath, I am authorized to make this affidavit for Plaintiff and I am informed and believe the above statements are true and
correct.

Subscribed and sworn to before me on 7/22/2010

_____
Legal Administrator

LOUIS DARDIGNAC
Notary Public, State of New York
No. 01DA5057380
Qualified in Rockland County
Commission Expires March 25, 2014

Adler and Associates, Ltd
13782480

# APPENDIX H

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
MUNICIPAL DEPARTMENT, FIRST DISTRICT

Cavalry Portfolio Services, LLC as assignee of Cavalry     )    Contract
SPV I, LLC as assignee of Washington Mutual Bank,     )
                                               )
        Plaintiff,                     )
                                               )    No.
     vs.                               )
                                               )    Return Date: _____
JENA PERRY,                       )
                                               )
        Defendant.                   )    Amount Claimed: $2,817.41, Plus court Costs

### SMALL CLAIMS COMPLAINT

NOW COMES the Plaintiff, Cavalry Portfolio Services, LLC as assignee of Cavalry SPV I, LLC as assignee of Washington Mutual Bank, by and through their attorneys, The Shindler Law Firm., and complaining of the Defendant(s), states as follows:

1. The Defendant(s) JENA PERRY, opened a credit card or line of credit account with Washington Mutual Bank whereby Defendant(s) received a credit card or line of credit with account #4185867406256116 and could charge goods and services to their account and receive cash advances.

2. The Defendant(s) subsequently defaulted by failing to pay for the indebtedness incurred resulting in the balance due to Plaintiff in the amount of $2,467.41.

3. For good and valuable consideration, Plaintiff is the assignee and bona fide owner of Defendant's credit card or line of credit account.

4. Due demand has been made on the Defendant(s) to pay this amount and the Defendant(s) have failed to do so.

5. Under the terms of the cardholder agreement, defendant shall, in the event of default, pay Plaintiff's reasonable attorney fees of $350.00 incurred in attempting to collect the balance due.

WHEREFORE, Plaintiff prays for judgment against the Defendant(s) for $2,817.41 plus court costs.

_____

The Shindler Law Firm.
1990 E. Algonquin Rd Suite 180
Schaumburg, IL 60173
(847) 537-1000
Cook County #: 27053
DuPage County#: 21020
ARDC #: 6202882

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION
WILL BE USED FOR THAT PURPOSE.

# AFFIDAVIT OF CLAIM

STATE OF NEW YORK )
                              ) SS
COUNTY OF WESTCHESTER )

RE: Cavalry Portfolio Services, LLC as assignee of Cavalry SPV I, LLC as assignee of Washington Mutual Bank (original creditor).

vs.

JENA PERRY

Before me, a notary public in and for Westchester County, personally appeared Kristina D. Pagni, who upon being duly sworn on oath, deposed and said:

1. I am an agent and duly authorized representative for Plaintiff and am competent to testify to the matters set forth herein.

2. I am acting in the capacity of Legal Administrator for my employer Cavalry Portfolio Services LLC, a Delaware limited liability company. Cavalry Portfolio Services, LLC performs recovery services for its affiliate, Cavalry SPV I, LLC. In performing recovery services for Cavalry SPV I, LLC, I am familiar with and have access to the books and records of Cavalry SPV I, LLC and of Cavalry Portfolio Services, LLC.

3. That the defendant, JENA PERRY, the account holder(s), opened an account with Washington Mutual Bank on 4/2/2007, which account became delinquent and was charged off on 8/31/2009 (the "Account").

4. As of 4/8/2010, the balance due and owing by the account holder(s) on the account as of the date hereof is $2468.83, which balance is comprised of $2159.31 of principal balance and $309.52 of accumulated interest + $0 of costs + $0 of other charges. The principal balance continues to accrue interest as of the date hereof at a rate of 24%. The account holder(s) have been credited for all payments, set-offs or other credits due.

5. That the Account was purchased by Cavalry SPV I, LLC on 9/30/2009 and the servicing and collection rights for the account were assigned by Cavalry SPV I, LLC to Cavalry Portfolio Services, LLC

6. In the normal course of business, Cavalry Portfolio Services, LLC maintains computerized account records for account holders. Cavalry Portfolio Services, LLC maintains such records in the ordinary and routine course of business and is charged with the duty to accurately record any business act, condition or event onto the computer record maintained for the accounts, with the entries made at or very near the time of any such occurrence. I have reviewed the applicable computer record as it relates to the Account, and I make this Affidavit based upon information from that review, and If called as a witness, I could testify to the following based on that review.

7. Washington Mutual Bank compiles records related to its account holders in electronic format. Subsequent to the purchase of the account, Washington Mutual Bank transferred copies of its electronic business records to Cavalry SPV I, LLC, which records were loaded into the computer system of Cavalry Portfolio Services, LLC and which are maintained in an electronic format.

8. That the attached statement of account with respect to the Account of JENA PERRY is just, true and correct according to the books and records, that the documents attached to the complaint are true and correct copies of the original and if called as a witness at trial, I can testify as to its contents.

9. That the defendant is not believed to be an active member of any branch of the Armed Forces of the United States of America.

10. Upon information and belief, no Defendant is an infant or incompetent or a member of the United States Armed Forces who would be entitled to stay relief.

11. Under oath, I am authorized to make this affidavit for Plaintiff and I am informed and believe the above statements are true and correct.

Subscribed and sworn to before me on 4/8/2010

_____
Legal Administrator

_____
LOUIS DARDIGNAC
Notary Public, State of New York
No. 01DA5057380
Qualified in Rockland County
Commission Expires March 25, 2014

Law Office of Keith Shindler, Ltd.
13839010