IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CAROLE GRANT-HALL; PAUL J. ASIAMA; CORNELIUS GRAY; and JAMES M. KLIMA; on behalf of themselves and the class members described below, <br><br> Plaintiffs, <br><br> v. <br><br> CAVALRY PORTFOLIO SERVICES, LLC; ARTUR B. ADLER & ASSOCIATES, LTD. d/b/a ADLER & ASSOCIATES, LTD; LAW OFFICE OF KEITH S. SHINDLER, LTD., d/b/a THE SHINDLER LAW FIRM, and KEVIN M. KELLY, P.C., <br><br> Defendants. | Case No. 11-cv-1832 <br><br> Judge Feinerman <br><br> Magistrate Judge Cole |

## DECLARATION OF ALFRED J. BROTHERS

I declare under penalty of perjury pursuant to 28 U.S.C. §1746 as follows:

1. I am over 18 years of age and competent to make this declaration.

2. I am the Chief Executive Officer of Cavalry SPV I, LLC ("SPV I") and am authorized to make this Business Records Declaration on its behalf.

3. It is the regular business practice of SPV I to prepare, and/or maintain and keep records, including Exhibits 1 through 18, on all credit card accounts it owns.

4. I am familiar with how information regarding the credit card accounts is transferred from the seller of those accounts to SPV I, and how that information is stored and retrieved at SPV I.

5. The business records, including Exhibits 1 through 18, are kept by, relied upon and incorporated into SPV I's business records in the regular and ordinary course of its business; and it was in the regular course of SPV I's business (or a predecessor in

interest) for its employees or representatives with knowledge of the act, event or condition recorded to make the record or transmit the information to be included in such record, at or near the time of the act, event, or condition.

6. As Chief Executive Officer for SPV I, I have access to SPV I's business records.

7. Based upon review of SPV I's business records and information provided to SPV I by prior owners of Plaintiffs' accounts at issue, I have personal knowledge of the facts stated in this Declaration.

## Cavalry SPV I and Cavalry Portfolio Services

8. SPV I is in the business of acquiring distressed consumer receivable portfolios. It acquires assets from many major banks, consumer finance companies, utilities, and other financial institutions.

9. Portfolios acquired by SPV I are collected and serviced by its affiliate, Cavalry Portfolio Services, LLC ("CPS"), pursuant to a Servicing and Management Agreement ("SMA") dated June 13, 2003. (A true and accurate redacted copy of the SMA and its amendment is attached as Exhibits 1 and 2, respectively.)

10. Subject to the terms of the SMA, CPS agreed to provide servicing and management of SPV I's account portfolios. Such services included, without limitation:

> (a) receiving, processing and accounting for all Collections in respect of the Account Portfolio, (b) monitoring and pursuing payment of obligations included in the Account Portfolio, (c) subject to Section 7, judicial enforcement of obligations included in the Account Portfolio, including engagement of attorneys for such purpose, and (d) taking all lawful actions and procedures as reasonably required to maximize the value of the Account Portfolio and collect on the obligations included therein.

(Ex. 1, SMA at p. 2.)

11. The SMA between SPV I and CPS, as amended, specified that:

> In consideration of Servicer's [CPS's] services under this Agreement, Owner [SPV I] shall pay to Servicer, on or before the second Business Day of each calendar week or at such other times as the parties hereto may agree, a service fee ("Service Fee") in an amount, determined for the preceding calendar week (or other such time period as the parties hereto may agree) equal to the sum of: (a) ▮% of ▮▮▮▮▮ Collections and ▮% of ▮▮▮▮▮ during such period less ▮% of ▮▮▮▮▮ during such period plus ▮▮▮▮▮



(Ex. 2 redacted) (emphasis in the original) (redacted pursuant to Protective Order.)

## Grant-Hall Account

12. On July 10, 2009, HSBC Bank Nevada, N.A. and HSBC Card Services (III) Inc. (collectively "HSBC"), on the one hand, and Cavalry Investments LLC ("Cavalry Investments"), on the other hand, entered into a purchase agreement whereby HSBC would sell certain accounts and associated receivables to Cavalry Investments for a defined period of time ("2009 HSBC Purchase Agreement"). (A true and accurate redacted copy of the 2009 HSBC Purchase Agreement is attached as Exhibit 3.)

13. The 2009 HSBC Purchase Agreement was subsequently amended to substitute "Cavalry SPV I, LLC" as purchaser for all purposes, (a true and accurate copy of the letter agreement evidencing the amendment is attached as Exhibit 4), and amended again to, among other things, revise the last closing date of the agreement from December 31, 2009, to June 30, 2010 (a true and accurate copy of the Second Amendment to the 2009 HSBC Purchase Agreement is attached as Exhibit 5).

14. On January 26, 2010, pursuant to the 2009 HSBC Purchase Agreement, SPV I purchased the Grant-Hall Account, together with a portfolio of other receivables. (A true

and accurate copy of the redacted Closing Statement is attached as Exhibit 6.) This transaction was documented by a Bill of Sale dated January 29, 2010, that sold, assigned and conveyed to SPV I all of HSBC's right, title, and interest in and to "those certain purchased receivables listed on the Sale File attached as Exhibit A." (A true and accurate copy of the Bill of Sale with redacted Sale File is attached as Exhibit 7.)

15. The Sale File contained information concerning the account number, account holder's name, address, phone numbers, account balance, etc., for each account in the portfolio, including the Grant-Hall Account. (See Ex. 7, Redacted Sale File.)

16. At or about the time of this purchase, pursuant to a written Assignment effective as of January 27, 2010, SPV I assigned all of its "rights to pursue collection and judicial enforcement of each of the Assignor's accounts purchased pursuant to Purchase Agreement dated July 10, 2009," including the Grant-Hall Account. (A true and accurate copy of the Assignment is attached as Exhibit 8.)

17. That Assignment was made "for the consideration of Assignor's covenants in the Servicing and Management between Assignor and Assignee dated as of June 13, 2003." (Ex. 8.)

### Asiama Account

18. On January 14, 2010, Wells Fargo Bank ("Wells Fargo") and SPV I entered into a purchase agreement whereby Wells Fargo would sell certain accounts and associated receivables to SPV I for a defined period of time ("Wells Fargo Purchase Agreement). (A true and accurate redacted copy of the Wells Fargo Purchase Agreement is attached as Exhibit 9.)

19. On February 19, 2010, pursuant to the Wells Fargo Purchase Agreement, SPV I purchased the Asiama Account together with a portfolio of other receivables. This transaction was documented by a Bill of Sale dated February 19, 2010, that sold, transferred, assigned, set over and conveyed to SPV I all of Wells Fargo's right, title, and interest in and to "each of the Receivables identified in Schedule I hereto." (A true and accurate copy of the Bill of Sale with redacted Schedule I is attached as Exhibit 10.)

20. Schedule I contained information concerning the account number, account holder's name, address, phone numbers, account balance, etc., for each account in the portfolio, including the Asiama Account. (See Ex. 10, Redacted Schedule I.)

21. At or about the time of this purchase, pursuant to a written Assignment effective as of February 22, 2010, SPV I assigned to CPS the right to pursue collection and judicial enforcement of "each of the Assignor's accounts purchased pursuant to that Purchase Agreement dated January 14, 2010, by and between Cavalry SPV I, LLC and Wells Fargo," including the Asiama Account. (A true and accurate copy of the Assignment is attached as Exhibit 11.)

22. That Assignment was made "for the consideration of Assignor's covenants in the Servicing and Management between Assignor and Assignee dated as of June 13, 2003." (Ex. 11.)

### Gray Account

23. On December 16, 2009, Bank of America/FIA Card Services, N.A. ("FIA") and SPV I entered into a Loan Sale Agreement whereby FIA would sell certain Accounts and associated receivables to SPV I for a defined period of time ("FIA Purchase Agreement"). (A true and accurate redacted copy of the Loan Sale Agreement is attached as Exhibit 12.)

5

24. On December 18, 2009, pursuant to the written FIA Purchase Agreement, SPV I purchased the Gray Account together with a portfolio of other receivables. This transaction was documented by a Bill of Sale dated December 18, 2009, that sold, transferred, assigned, set over, quitclaimed and conveyed to SPV I all of FIA's right, title, and interest in and to "each of the loans identified in the loan schedule attached hereto." (A true and accurate copy of the Bill of Sale with redacted Loan Schedule is attached as Exhibit 13.)

25. The loan schedule contained information concerning the account number, account holder's name, address, phone numbers, account balance, etc., for each account in the portfolio, including the Gray Account. (See Ex. 13, Redacted Loan Schedule.)

26. At or about the time of this purchase, pursuant to a written Assignment effective as of December 30, 2009, SPV I assigned to CPS the right to pursue collection and judicial enforcement of "each of the Assignor's accounts purchased pursuant to that Purchase Agreement dated December 16, 2009, by and between Cavalry SPV I, LLC and FIA," including the Gray Account, to CPS. (A true and accurate copy of the Assignment is attached as Exhibit 14.)

27. That Assignment was made "for the consideration of Assignor's covenants in the Servicing and Management between Assignor and Assignee dated as of June 13, 2003." (Ex. 14.)

### Klima Account

28. On July 9, 2010, HSBC and SPV I entered into a purchase agreement whereby HSBC would sell certain accounts and associated receivables to SPV I for a defined period of

6

time ("2010 HSBC Purchase Agreement"). (A true and accurate redacted copy of the HSBC and SPV Purchase Agreement is attached as Exhibit 15.)

29. On September 27, 2010, pursuant to the 2010 HSBC Purchase Agreement, SPV I purchased the Klima Account, together with a portfolio of other receivables. (A true and accurate copy of the redacted Closing Statement is attached as Exhibit 16.) This transaction was documented by a Bill of Sale dated September 29, 2010, that sold, assigned and conveyed to SPV I all of HSBC's right, title, and interest in and to "those certain purchased receivables listed on the Sale File attached as Exhibit A." (A true and accurate copy of the Bill of Sale with redacted Sale File is attached as Exhibit 17.)

30. The Sale File contained information concerning the account number, account holder's name, address, phone numbers, account balance, etc., for each account in the portfolio, including the Klima Account. (See Ex. 17, Redacted Sale File.)

31. At or about the time of this purchase, pursuant to a written Assignment effective as of September 29, 2010, SPV I assigned all of its "rights to pursue collection and judicial enforcement of each of the Assignor's accounts purchased pursuant to Purchase Agreement dated July 9, 2010," including the Klima Account. (A true and accurate copy of the Assignment is attached as Exhibit 18.)

32. That Assignment was made "for the consideration of Assignor's covenants in the Servicing and Management between Assignor and Assignee dated as of June 13, 2003." (Ex. 18.)


I declare under penalty of perjury that the foregoing is true and correct.

By: *[signature]*

Date: June 1, 2012